IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE TUBBS, | ) | Case No. 4:21-cv-925 |
| | ) | |
| Petitioner, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| THOMAS SCHWEITZER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

On April 9, 2017, Shawnee Jones got into a fight with Jermaine Tubbs, her live-in boyfriend, and called her mother, Sophia Brooks ("Sophia"), to pick her up.  Michael Brooks ("Michael"), Jones's stepfather, drove Sophia to Jones's apartment, honked the horn, got his cane, and walked up to the door.  Sophia and her daughter came out, followed by Tubbs.  A verbal altercation between Michael and Tubbs ensued, which escalated when Michael blocked Tubbs from reentering the apartment.  Tubbs pushed Michael; Michael hit Tubbs in the leg with his cane; and Tubbs pulled out a gun and shot Michael twice in the head.  Tubbs later claimed that he acted in self-defense.  A Mahoning County, Ohio, jury disagreed and found Tubbs guilty of murder.  The trial court separately found Tubbs guilty of having weapons while under disability and sentenced him to an aggregate sentence of 21 years to life in prison.

Tubbs, pro se, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, raising three claims for relief (ECF Doc. 1):

> **Ground One**: The trial court erred when it instructed the jury that it could only consider voluntary manslaughter if it was unable to find Tubbs guilty of murder. ECF Doc. 1 at 5.

> **Ground Two**: Tubbs's consecutive three-year sentence for having weapons while under disability was excessive. ECF Doc. 1 at 7.

> **Ground Three**: Tubbs's murder conviction was against the manifest weight of the evidence. ECF Doc. 1 at 8.

Respondent, Chae Harris,[1] filed a return of writ, to which Tubbs filed a traverse. ECF Doc. 6; ECF Doc. 8.

Because Tubbs's claims are procedurally defaulted and meritless, I recommend that Tubbs's claims be DISMISSED as defaulted or DENIED on the merits and that his petition for a writ of habeas corpus be DENIED. I further recommend that Tubbs not be granted a certificate of appealability.

## I. State Court History

### A. Trial Court Proceedings

On May 18, 2017, a Mahoning County grand jury returned an indictment charging Tubbs with one count of murder (Count One) and one count of having weapons while under disability (Count Two). ECF Doc. 6-1 at 4–5. Count One also had a firearm specification attached. ECF Doc. 6-1 at 4. Tubbs pleaded not guilty. ECF Doc. 6-1 at 6.

---

[1] As the current warden of Lebanon Correctional Institution, where Tubbs is confined, Chae Harris is the proper respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004) (stating that the proper respondent in a habeas action "is the warden of the facility where the [petitioner] is being held").

On July 16, 2018, Tubbs's case proceeded to trial: a jury trial on Count One and a bench trial on Count Two.  ECF Doc. 6-1 at 10; ECF Doc. 6-2 at 1, 12–15.  The evidence presented at trial, as described by the Ohio Court of Appeals, was as follows:

{¶14} Sophia testified that on April 9, 2017, she, Michael, Shawnee, and Shawnee's children were at her house eating and drinking.  [ECF Doc. 6-3 at 120–21].  Shawnee left Sophia's house between 11:15 and 11:30 p.m.  [ECF Doc. 6-3 at 122].  Michael and Sophia then left to pick up Mikhail[, Michael's son,] and his girlfriend.  [ECF Doc. 6-3 at 123].  They dropped Mikhail's girlfriend off around midnight.  [ECF Doc. 6-3 at 123].  While they were driving, Sophia received a text from Shawnee.  [ECF Doc. 6-3 at 124–25].  The text prompted her to call 911.  [ECF Doc. 6-3 at 125].  Sophia stated this was "not the first time we had to call the police with these two [Tubbs and Shawnee]."  [ECF Doc. 6-3 at 124].  They then drove to Shawnee's apartment to see what was happening.  [ECF Doc. 6-3 at 126].

{¶15} Sophia stated that when they arrived, she remained in the car and Michael walked up to Shawnee's door with his cane.  [ECF Doc. 6-3 at 135].  She saw Shawnee and her daughter come out.  [ECF Doc. 6-3 at 135].  Then she saw [Tubbs] come out.  [ECF Doc. 6-3 at 135].  Sophia watched [Tubbs] and Michael talking and it appeared to be a heated conversation.  [ECF Doc. 6-3 at 136].  She then saw [Tubbs] do something to Michael.  [ECF Doc. 6-3 at 137].  Next, Michael hit [Tubbs's] ankles with his cane.  [ECF Doc. 6-3 at 137–38].  Sophia stated that [Tubbs] then reached into his waistband and shot Michael twice.  [ECF Doc. 6-3 at 138–39].  [Tubbs] then ran off.  [ECF Doc. 6-3 at 140].

{¶16} Sophia also testified as to Michael's health.  She stated that over the years he had suffered a brain aneurysm, a massive stroke, and a heart attack.  [ECF Doc. 6-3 at 117].  Consequently, Sophia stated, Michael was not an "able-bodied" man.  [ECF Doc. 6-3 at 118].  He was weak on his left side and used a cane to walk when they went out.  [ECF Doc. 6-3 at 118].

{¶17} Shawnee testified that after she left Sophia's house on the night in question, she picked up [Tubbs] and they went to her apartment.  [ECF Doc. 6-3 at 165–66].  She stated that she and [Tubbs] got into an argument because she would not let him take her car.  [ECF Doc. 6-3 at 169–70].  Shawnee then went into the bathroom with her daughter and locked the door.  [ECF Doc. 6-3 at 170].  From the bathroom, she contacted Sophia and asked her to come over.  [ECF Doc. 6-3 at 170].  Soon thereafter, Shawnee heard a car horn beep so she and her daughter went outside.  [ECF Doc. 6-3 at 171–72].

{¶18} Once outside, Shawnee tried to stop Michael from approaching her apartment because she did not want him to get into a fight with [Tubbs].  [ECF Doc. 6-3 at 172].  She stated that Michael pushed her out of his way and

3

continued up to her apartment.  [ECF Doc. 6-3 at 172].  Shawnee stated that
[Tubbs] came outside and he and Michael argued.  [ECF Doc. 6-3 at 175].
[Tubbs] tried to go back inside, but Michael was holding the door.  [ECF Doc. 6-3
at 175].  Shawnee heard [Tubbs] tell Mikhail to get Michael "out of his face"
before he killed him.  [ECF Doc. 6-3 at 175].  Next, she saw [Tubbs] push
Michael's head and then saw Michael hit [Tubbs] on the leg with his cane.  [ECF
Doc. 6-3 at 176–78].  Shawnee then saw [Tubbs] reach out for the gun in his
waistband.  [ECF Doc. 6-3 at 179].  She saw [Tubbs] hold the gun above his head
and shoot Michael twice.  [ECF Doc. 6-3 at 179].  Shawnee testified that [Tubbs]
was never on the ground during the altercation and that he was standing when he
shot Michael.  [ECF Doc. 6-3 at 179–80].  Shawnee testified that [Tubbs] later
told her he shot Michael in self-defense.  [ECF Doc. 6-3 at 186].

{¶19} Mikhail testified that after they arrived at Shawnee's apartment,
Michael and [Tubbs] were arguing outside.  [ECF Doc. 6-3 at 223].  When
[Tubbs] tried to go back into the apartment, Michael blocked his way.  [ECF Doc.
6-3 at 223–24].  [Tubbs] shoved Michael.  [ECF Doc. 6-3 at 226].  Mikhail stated
that Michael and [Tubbs] then started physically fighting.  [ECF Doc. 6-3 at 226].
He saw Michael hitting [Tubbs] with his cane and [Tubbs] hitting Michael.  [ECF
Doc. 6-3 at 227].  Mikhail heard [Tubbs] tell him to get Michael "out of my face
before I shoot him."  [ECF Doc. 6-3 at 250].  Then he saw [Tubbs] shoot Michael.
[ECF Doc. 6-3 at 227].

{¶20} Youngstown Police Officer Mark Crissman photographed [Tubbs] later
during the day on April 10, 2017.  He testified that he did not observe any injuries
to [Tubbs's] face.  [ECF Doc. 6-4 at 78].  Officer Crissman stated that [Tubbs]
had a number of small cuts and abrasions on both his right and left shins.  [ECF
Doc. 6-4 at 78–79].

{¶21} Dr. Thomas Gilson is the medical examiner who performed the autopsy
in this case.  Dr. Gilson testified that one gunshot was to the side of Michael's
head and the other was to his nose.  [ECF Doc. 6-4 at 148, 156].  Neither was to
the top of his head.  [ECF Doc. 6-4 at 167].  Dr. Gilson also testified that, at the
time of his death, Michael had a blood alcohol concentration of .171 and also had
an antidepressant in his system.  [ECF Doc. 6-4 at 168].

{¶22} Youngstown Detective-Sergeant Ronald Rodway testified that [Tubbs]
turned himself in approximately nine hours after the shooting.  [ECF Doc. 6-4 at
183].  Detective-Sergeant Rodway also testified that when he interviewed Sophia
she indicated that she "heard" two gunshots and then saw Michael fall to the
ground, not that she "saw" the shooting.  [ECF Doc. 6-4 at 196].  He also stated
that when he interviewed Shawnee she described Michael as being "drunk and
belligerent" that night.  [ECF Doc. 6-4 at 200].

{¶23} Finally, [Tubbs] testified in his defense.  He stated that on the night in
question, he and Shawnee got into an argument about her car.  [ECF Doc. 6-5 at

19–20]. She locked herself in the bathroom and he went downstairs. [ECF Doc. 6-5 at 20]. Shortly thereafter, Shawnee came down and went outside. [ECF Doc. 6-5 at 20]. He got up to see what was going on and found Michael, drunk, standing on the porch by the front door. [ECF Doc. 6-5 at 20–22]. Shawnee tried to push Michael away. [ECF Doc. 6-5 at 22].

{¶24} [Tubbs] stated that he tried to go back in the apartment but Michael pushed him. [ECF Doc. 6-5 at 23]. [Tubbs] pushed him back. [ECF Doc. 6-5 at 23]. Michael then hit [Tubbs] with his cane. [ECF Doc. 6-5 at 23]. [Tubbs] testified that he fell to the ground and Michael continued beating him with his cane. [ECF Doc. 6-5 at 23, 26]. [Tubbs] stated that he "balled up" on the ground while Michael was beating him. [ECF Doc. 6-5 at 26]. [Tubbs] stated that he "feared for his life" and "had to defend himself." [ECF Doc. 6-5 at 29]. He stated he could not get up and shot twice from the ground. [ECF Doc. 6-5 at 29]. [Tubbs] claimed he only "glanced" at where he was shooting. [ECF Doc. 6-5 at 31]. He stated he then stood up and was shocked so he ran. [ECF Doc. 6-5 at 31]. [Tubbs] testified he never intended to kill Michael. [ECF Doc. 6-5 at 33]. His intent was to defend himself. [ECF Doc. 6-5 at 34].

{¶25} On cross examination, [Tubbs] admitted that he knew Michael had some health problems and used a cane. [ECF Doc. 6-5 at 37–38].

ECF Doc. 6-1 at 88–91.[2]

The trial court instructed the jury as follows:

If all of you are unable to agree on a verdict of either guilty or not guilty of the offense of murder, then you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the inferior degree offense of voluntary manslaughter.

* * *

The defendant claims that at the time of the offense, the defendant acted knowingly while under the influence of sudden passion or a sudden fit or rage, either of which was brought on by serious provocation occasioned by Michael Brooks that was reasonably sufficient to incite the defendant into using deadly force, this is known as voluntary manslaughter.

Before you can find the defendant guilty of voluntary manslaughter, you must find that the state has proved beyond a reasonable doubt that on or about April 10, 2017, in Mahoning County, Ohio, the defendant, while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation, occasioned by the victim that it is reasonably sufficient to

---

[2] These factual findings are presumed correct unless Tubbs rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

5

incite the person into using deadly force, knowingly causing the death of Michael Brooks.

\* \* \*

If you find that the state proved beyond a reasonable doubt all of the essential elements of murder, you must separately decide whether the defendant proved by a greater weight of the evidence that he knowingly acted while under the influence of sudden passion or a sudden fit of rage, either of which was brought on by serious provocation occasioned by Michael Brooks that was reasonably sufficient to incite the defendant into using deadly force.  However, if you find that the state failed to prove beyond a reasonable doubt all the essential elements of murder, then your verdict must be not guilty of that offense and you will not make that determination.

If you find that the state proved beyond a reasonable doubt all the essential elements of murder, and you find that the defendant failed to prove by a greater weight of the evidence that he knowingly acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by a serious provocation occasioned by Michael Brooks that reasonably -- sufficiently incited the defendant into using deadly force, then you must find the defendant guilty of murder.

ECF Doc. 6-5 at 144–46, 148–49.

During deliberation, the jury requested clarification on when to consider voluntary manslaughter.  ECF Doc. 6-5 at 160–61.  The trial court referred the jury to the jury instructions, stating that the jury was to consider voluntary manslaughter only if it could not reach a verdict on murder.  *Id.*

The jury found Tubbs guilty of Count One and the trial court found him guilty of Count Two.  ECF Doc. 6-1 at 11–12, 14; ECF Doc. 6-5 at 173–75.  The trial court subsequently sentenced Tubbs to an aggregate sentence of 21 years to life in prison, consisting of: (i) 15 years to life imprisonment on Count One; (ii) 3 years on the firearm specification, to be served prior and consecutive to the sentence on Count One; and (iii) 3 years on Count Two, to be served consecutive to Count One.[3]  ECF Doc. 6-1 at 14.  The court explained that the maximum

---

[3] The warden did not include the sentencing transcripts among those filed with this court.

sentence on Count Two was "necessary due to [Tubbs's] previous history of offenses and this

being the worst form of the crime." ECF Doc. 6-1 at 15.  The court further found that:

> [C]onsecutive sentences are necessary to protect the public from future crime and
> to punish the offender … ; that consecutive sentences are not disproportionate to
> the seriousness of [Tubbs's] conduct and to the danger [Tubbs] poses to the public
> … ; [and] that the offenses committed by [Tubbs] were part of a course of
> conduct that no single prison term for any of the offenses committed as part of the
> course of conduct adequately reflects the seriousness of [Tubbs's] conduct, and
> the fact that there was more than one offense in this action.

ECF Doc. 6-1 at 14–15.

### B.    Direct Appeal

On September 5, 2018, Tubbs timely appealed.  ECF Doc. 6-1 at 16.  Through new

appointed counsel, Tubbs filed a merits brief asserting three assignments of error: (i) the trial

court's jury instructions confused and misled the jury, depriving him of his due process right to a

fair trial; (ii) his sentence on Count Two was excessive, in violation of his due process right to be

free from cruel and unusual punishment; and (iii) his murder conviction was against the manifest

weight of the evidence.  ECF Doc. 6-1 at 22–23.

Tubbs's jury instruction assignment of error argued that the trial court erred because it

first instructed the jury to consider voluntary manslaughter if it could not agree on a verdict for

murder but then instructed the jury to consider voluntary manslaughter only if they found all the

essential elements of murder.  ECF Doc. 6-1 at 35–37.  This inconsistency, Tubbs argued,

prevented the jury from considering voluntary manslaughter as an alternative to murder.  ECF

Doc. 6-1 at 36–37.

Tubbs's sentence assignment of error argued that the trial court erred by not articulating

reasons to support its findings in support of its sentence on Count Two.  ECF Doc. 6-1 at 41–48.

He argued that there was no evidence supporting those findings. ECF Doc. 6-1 at 45.  And he

argued that it would be cruel and unusual to allow the maximum sentence simply because the legislature authorized it without any explanation for why such a sentence was warranted in the defendant's particular case.  ECF Doc. 6-1 at 47–48.

And Tubbs's manifest weight of the evidence assignment of error argued that the jury was misled by confusing jury instructions and incredible evidence.  ECF Doc. 6-1 at 48–52. Tubbs argued that the state's witnesses testified that he held the gun over his head and fired downward, which was inconsistent with the forensic evidence.  ECF Doc. 6-1 at 50.  He also argued that the state's witnesses described Michael "as unstoppable and upset, who would not let Tubbs de-escalate the situation and beat him."  ECF Doc. 6-1 at 48, 50.  The state filed an appellee brief.  ECF Doc. 6-1 at 54–84.

On February 24, 2020, the Ohio Court of Appeals overruled Tubbs's assignments of error and affirmed his convictions.  ECF Doc. 6-1 at 85–101; *see also State v. Tubbs*, 2020-Ohio-730 (Ohio Ct. App. 2020).  Because Tubbs did not object to the jury instructions, the court reviewed his jury instruction assignment of error for plain error.  ECF Doc. 6-1 at 94.  The court found that no plain error occurred because no jury could have found Tubbs guilty of manslaughter, because Tubbs testified that he shot Michael out of fear, which was insufficient under Ohio law to establish the mental state required for voluntary manslaughter.  ECF Doc. 6-1 at 94–96.

In rejecting Tubbs's sentence assignment of error, the Ohio Court of Appeals found that Tubbs's sentence was within the limits prescribed by statute; the trial court considered the requisite statutory factors; Ohio law did not require the trial court to elaborate on its findings on any of the factors before imposing consecutive sentences; and Ohio law did not require the trial court to make special findings before imposing the maximum possible sentence.  ECF Doc. 6-1 at 98–100.  And the court concluded that there was no indication that the evidence "clearly and

convincingly does not support the trial court's findings under the applicable sentencing statutes.

Moreover, the sentence is not contrary to law." ECF Doc. 6-1 at 100.

And in rejecting Tubbs's manifest weight of the evidence assignment of error, the Ohio

Court of Appeals reasoned:

> The evidence here clearly proved that [Tubbs] caused Michael's death.  The only
> questions were whether he acted "purposely" and whether he acted in self-
> defense.
>
> * * *
>
> {¶28} Mikhail testified that [Tubbs] told him to get Michael "out of my face
> before I shoot him." [ECF Doc. 6-3 at 250].  Then he saw [Tubbs] shoot Michael.
> [ECF Doc. 6-3 at 227].  And Shawnee testified that she too heard [Tubbs] tell
> Mikhail to get Michael "out of his face" before he killed him.  [ECF Doc. 6-3 at
> 175].  These statements indicated that [Tubbs's] specific intention was to shoot
> Michael.  Moreover, [Tubbs] deliberately removed a gun from his waistband and
> fired two shots while he was involved in a fight with Michael.  [Tubbs's] actions
> were those of a man acting to purposely shoot someone.
>
> * * *
>
> {¶30} The evidence indicated that both [Tubbs] and Michael were at fault for
> creating the situation.  The evidence demonstrated that both men were arguing,
> both men pushed one another, Michael hit [Tubbs] with his cane, and [Tubbs] hit
> Michael.  But the evidence does not support the idea that [Tubbs] had a bona fide
> belief that his only means of escape death or great bodily injury was the use of
> deadly force.
>
> {¶31} [Tubbs] testified that he "balled up" on the ground while Michael was
> beating him with his cane. [ECF Doc. 6-5 at 26].  [Tubbs] further testified that he
> "feared for his life" and "had to defend himself." [ECF Doc. 6-5 at 29].  He
> claimed that he never intended to kill Michael but only meant to defend himself.
> [ECF Doc. 6-5 at 33–34].
>
> {¶32} But there was a significant amount of evidence to contradict [Tubbs's]
> testimony.  Firstly, [Tubbs] knew that Michael was in poor health and required a
> cane to walk.  Second, the other eyewitnesses testified that [Tubbs] was standing
> when he shot Michael as opposed to being "balled up" on the ground.  And third,
> police observed [Tubbs] just nine hours after the shooting.  The only injuries
> observed on [Tubbs] were some minor scrapes and abrasions on his shins.  Thus,
> the evidence did not demonstrate that [Tubbs] feared for his life such that his only
> means of escape was the use of deadly force.

{¶33} Moreover, there is a duty to retreat before using deadly force unless the person using such force is in his own home. … Here, the evidence demonstrated that [Tubbs] could have retreated from Michael instead of shooting him. Michael was disabled and required a cane to walk. [Tubbs] could have easily retreated from the affray but instead chose to fire his gun at Michael. Thus, [Tubbs] could have retreated to avoid being struck by Michael's cane.

{¶34} [Tubbs] also argues that Sophia told Detective Rodway that she did not see the shooting; however, she described in detail at trial. This matter would go to Sophia's credibility. And … witness credibility is a matter left to the jury.

ECF Doc. 6-1 at 91–92 (internal citations omitted).

On April 9, 2020, Tubbs appealed to the Ohio Supreme Court. ECF Doc. 6-1 at 102–03. Tubbs's memorandum in support of jurisdiction reiterated his jury instruction assignment of error as a proposition of law. ECF Doc. 6-1 at 105–15. He did not reassert his any of his other assignments of error. *See id.* On May 26, 2020, the Ohio Supreme Court declined to exercise jurisdiction. ECF Doc. 6-1 at 117.

## II. Law and Analysis

### A. Ground One

Tubbs's Ground One claim reiterates his Ohio Court of Appeals argument that the trial court's inconsistent instructions on when and how to consider voluntary manslaughter violated his due process rights. ECF Doc. 1 at 5. Warden Harris responds that Tubbs's Ground One claim is procedurally defaulted because the Ohio Court of Appeals enforced the contemporaneous objection rule against Tubbs and, alternatively, meritless.[4] ECF Doc. 6 at 15–18, 21–27.

---

[4] Warden Harris frames the issue of merit in terms of cognizability. However, a claim challenging the propriety of the petitioner's jury instructions is cognizable on federal habeas review to the extent the error amounts to a violation of due process. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Thus, I will consider the warden's argument on the issue of cognizability as an argument that Tubbs's Ground One claim lacks merit.

10

### B.     Procedural Default

#### 1.     Establishing Default

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures."  *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019).  Thus, we will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is independent of the federal question and is adequate to support the judgement."  *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (internal quotation marks omitted).

This Circuit consults a four-part test to decide whether a petitioner has procedurally defaulted his claim.  A petitioner procedurally defaults a claim if: (i) the petitioner fails to comply with a state procedural rule; (ii) the state courts enforced the rule; (iii) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (iv) the petitioner cannot show cause and prejudice excusing the default.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Tubbs's Ground One claim is procedurally defaulted.  Ohio law requires a contemporaneous objection to an alleged trial court error to preserve the issue for direct appeal.  *State v. Glaros*, 170 Ohio St. 471, 475 (Ohio 1960).  Tubbs failed to comply with the contemporaneous objection rule when he did not object to the trial court's jury instructions at trial.  The Ohio Court of Appeals enforced the contemporaneous objection rule against Tubbs by only reviewing the claim for plain error.  ECF Doc. 6-1 at 94; *Fleming v. Metrish*, 556 F.3d 520,

11

539 (6th Cir. 2009) ("this Court does not construe a state court's plain-error review as negating the determination that a claim has been procedurally defaulted").  Ohio's contemporaneous objection rule is an adequate and independent ground for denying review of a federal constitutional claim.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012).  Tubbs's Ground One claim is, therefore, procedurally defaulted.  *See Lovins*, 712 F.3d at 295.

### 2.      Overcoming Default

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves.  A petitioner can obtain review of procedurally defaulted claims if he shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred.  *Coleman*, 501 U.S. at 750; *Wogenstahl*, 668 F.3d at 337.  A petitioner can also obtain review of a procedurally defaulted claim if his procedurally defaulted claim is based on new evidence that he was factually innocent of the crime of conviction.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Tubbs has not attempted to establish cause to excuse his procedural default.  *See generally* ECF Doc. 1; ECF Doc. 8.  He could potentially establish cause through a claim of ineffective assistance of trial counsel, but even that he cannot do now because such a claim would itself be procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Tubbs could have raised a claim of ineffective assistance of trial counsel based on trial counsel's failure to object to the jury instructions on direct appeal, given that such a claim would not rely on evidence outside the record.  *Cf. State v. Radel*, 2009-Ohio-3543, ¶15 (Ohio Ct. App. 2009).  He could also have filed an application to reopen his direct appeal pursuant to Ohio App. 26(B)

based on appellate counsel's failure to argue that trial counsel's omission was ineffective assistance.  Any future attempt to raise the claim in terms of ineffective assistance of trial counsel would be barred by res judicata.  *State v. Cole*, 2 Ohio St.3d 112, 113 (Ohio 1982).  And any attempt to reopen his direct appeal would be untimely.  Ohio App. R. 26(B) (requiring that such applications be filed within 90 days of the journalization of the appellate judgment absent a showing of good cause for filing at a later date).  Tubbs's inability to establish cause to excuse his procedural default makes it unnecessary to consider whether he can show prejudice.  *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007).  And Tubbs has not raised an actual innocence argument in relation to this claim.  *See generally* ECF Doc. 1; ECF Doc. 8.

I recommend that Tubbs's Ground One claim be DISMISSED as procedurally defaulted.

### 3.    Merits

Even if not procedurally defaulted, Tubbs's Ground One claim would fail for lack of merit.

Because the Ohio Court of Appeals reviewed Tubbs's Ground One claim for plain error, its decision denying relief is subject to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).  Under AEDPA, a writ of habeas corpus can issue only if that decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d).  So long as "fairminded jurists" could disagree on whether the state court correctly decided the matter, we may not grant relief.  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The propriety of state court jury instructions is generally not cognizable on federal habeas review. *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012). The one exception is when the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Cottenham v. Nagy*, No. 21-1711, 2022 U.S. App. LEXIS 13219, at *10 (6th Cir. May 16, 2022) (unreported). Here, Tubbs has not shown that the challenged instructions infected his trial to the point that his due process rights were violated. Rather, the record shows that Tubbs's theory of the case was incompatible with both the evidence and the law. Further, Tubbs has not identified any precedent of the United States Supreme Court that he contends the Ohio Court of Appeals' decision was contrary to or conflicted with. Nor has he challenged as unreasonable any factual findings by the Ohio Court of Appeals on the record that was before it. As such, no habeas relief is warranted.

Start with the statute. Under Ohio law, murder can be charged when one purposely causes the death of another, Ohio Rev. Code § 2903.02(A), whereas a person commits voluntary manslaughter when he knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force," Ohio Rev. Code § 2903.03(A). Because they share the same elements, minus the mitigating elements of voluntary manslaughter, voluntary manslaughter is an inferior offense to the offense of murder. *State v. Rhodes*, 63 Ohio St.3d 613, 617 (1992). This means that a defendant cannot be convicted of both murder and voluntary manslaughter for the same killing. *State v. Griffin*, 886 N.E.2d 921, 924–25 (Ohio Ct. App. 2008).

Tubbs has not shown that the Ohio Court of Appeals' rejection of his Ground One claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C.

14

§ 2254(d)(1).  The court determined that the allegedly erroneous jury instructions had no effect on the outcome at trial because Tubbs's defense theory was legally incompatible with voluntary manslaughter.  *See* ECF Doc. 6-1 at 94–95.  Fair-minded jurists could disagree on the correctness of that determination.  *See Harrington*, 562 U.S. at 101.  No evidence was presented at trial that Tubbs was under the influence of sudden passion or a fit of rage.  *See* Ohio Rev. Code § 2903.03(A).  Tubbs's entire defense, rather, was that he shot Michael out of fear.  *See* ECF Doc. 6-3 at 77–82; ECF Doc. 6-5 at 109–18.  And the only evidence Tubbs presented to support his theory was his own testimony that he acted in self-defense out of fear.  *Rhodes*, 63 Ohio St.3d at 617–18 (stating that the defendant bears the burden of proving the mitigation elements by a preponderance of the evidence); ECF Doc. 6-5 at 29 ("I just feared for my life.  I had to defend myself."); *see also* ECF Doc. 6-5 at 32, 34, 49.  "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."  *State v. Mack*, 82 Ohio St.3d 198, 200 (1998).  Thus, the Ohio Court of Appeals' rejection of Tubbs' Ground One claim was not beyond any possibility of fair-minded disagreement.  *See Harrington*, 562 U.S. at 102–03.

Should the Court prefer to do dispose of Tubbs's Ground One claim on this basis, it could be denied as meritless.

### C.    Grounds Two and Three

Tubbs's Ground Two claim argues that his sentence on Count Two was cruel and unusual because it was greater than necessary to protect the public.  ECF Doc. 1 at 7.  And his Ground Three claim reiterates his manifest weight of the evidence assignment of error argument that the jury was misled by the jury instructions and that the weight of the evidence showed that he acted in self-defense.  ECF Doc. 1 at 8.

Warden Harris responds that Tubbs's Ground Two and Ground Three claims are procedurally defaulted because Tubbs did not raise them in his memorandum in support of jurisdiction to the Ohio Supreme Court.  ECF Doc. 6 at 27–29.  Warden Harris argues that the claims are otherwise noncognizable and meritless.  ECF Doc. 6 at 30–41.

### 1.  Procedural Default

Before coming to federal court, a habeas petitioner must give the state courts a "*fair*" opportunity to act on his claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original).  For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised *at every available stage* of state review.  *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  If the petitioner hasn't done so and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, which means this court cannot act on the claim either.  *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

Tubbs's claims for relief in Grounds Two and Three are procedurally defaulted.  Tubbs failed to raise either claim in his Ohio Supreme Court memorandum in support of jurisdiction. *See* ECF Doc. 6-1 at 104–15.  He therefore failed to raise his Ground Two and Ground Three claims at each and every stage of state review.  *Wagner*, 581 F.3d at 418.  Tubbs cannot now return to the Ohio Supreme Court to raise the issue, because the only mechanism by which to reopen an Ohio Supreme Court appeal is not available to him; it only applies to defendants in capital cases.  Ohio S. Ct. Prac. R. 11.06.  And any other attempt to raise the issue would be barred by Ohio's res judicata doctrine.  *Cole*, 2 Ohio St.3d at 113.  Thus, Tubbs's Ground Two and Ground Three claims are procedurally defaulted.  *Williams*, 460 F.3d at 809.

16

Tubbs has not attempted to establish cause to excuse his procedural default.  *See generally* ECF Doc. 1; ECF Doc. 8.  And Tubbs could not establish cause through a claim of ineffective assistance of appellate counsel because he did not have a right to counsel on direct appeal to the Ohio Supreme Court.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further"); *Wainright v. Torna*, 455 U.S. 586, 587–588 (1982) (holding that there can be no deprivation of effective assistance of counsel in a proceeding where there is no constitutional right to counsel); *see also Shine-Johnson v. Gray*, No. 21-4162, 2022 U.S. App. LEXIS 17736, at *5 (6th Cir. June 27, 2022) (unreported) ("ineffective assistance of counsel can establish cause to excuse a procedural default only when it occurs in a proceeding where the defendant has a right to counsel").  Tubbs's inability to establish cause to excuse his procedural default of his Ground Two and Ground Three claims makes it unnecessary to consider whether he can show prejudice.  *Matthews*, 486 F.3d at 891.  And Tubbs has also not raised an actual innocence argument in relation to these claims.  *See generally* ECF Doc. 1; ECF Doc. 8.

I recommend that Tubbs's Ground Two and Ground Three claims be DISMISSED as procedurally defaulted.

## 2.    Merits

Even if they were not procedurally defaulted, Tubbs's Ground Two and Ground Three claims would fail for lack of merit.

###### a.  Ground Two

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const., amend. VIII.  It does not require "strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime."  *Harmerlin v. Michigan*, 501 U.S. 957, 1001 (1991) (internal quotation marks omitted).  The Sixth Circuit narrowly applies the proportionality principle: "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (internal quotation marks omitted); *see also Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (stating that the disproportionality principle will only apply in "the exceedingly rare and extreme case" (internal quotation marks omitted)).

Tubbs has not established that the Ohio Court of Appeals' rejection of his Ground Two claim was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  Tubbs has not identified any decision of the United States Supreme Court precedent that he claims the Ohio Court of Appeals' decision was contrary to or an unreasonable application of.  *See generally* ECF Doc. 1; ECF Doc. 8; ECF Doc. 6-1 at 41-48.  Moreover, Tubbs's three-year sentence for having weapons while under disability was within the limits prescribed by Ohio law.  Ohio Rev. Code § 2923.13(B); Ohio Rev. Code § 2929.14(A)(3)(b). And Ohio law authorizes the imposition of consecutive sentences.  Ohio Rev. Code § 2929.14(A)(4).  "[A] sentence that falls within the maximum penalty authorized by statute – as [Tubbs's] did here – generally does not constitute cruel and unusual or excessive punishment." *Barrett v. Parris*, No. 20-5202, 2020 U.S. App. LEXIS 22718, at *11–12 (6th Cir. July 20, 2020) (unreported) (internal quotation marks omitted).  Thus, the Ohio Court of Appeals' rejection of

Tubbs's Ground Two claim was not beyond any possibility of fair-minded disagreement.  *See*

*Harrington*, 562 U.S. at 102–03.  In such a case, no habeas relief is due.

Should the Court prefer to dispose of Tubbs's Ground Two claim on this basis, it could

be denied as meritless.

        **b.**        **Ground Three**

It is well-settled that claims regarding the manifest weight of the evidence are grounded

in state law and therefore not cognizable on federal habeas review."  *Jackson v. Noble*, No. 3:18-

cv-113, 2020 U.S. Dist. LEXIS 250037, at *10 (N.D. Ohio Sept. 15, 2020) (collecting cases).

But when, as here, the petitioner is proceeding pro se, such claims can be reconstrued as a

challenge to the sufficiency of the evidence, which is cognizable.  *Thompson v. Harris*, No.

4:18cv2103, 2020 U.S. Dist. LEXIS 181863, at *25 (N.D. Ohio Sept. 30, 2020) (collecting

cases).

In reviewing an insufficient evidence claim, federal courts apply the *Jackson v. Virginia*

standard: "whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt."  443 U.S. 307, 319 (1979) (emphasis in original).  This standard "must be applied with

explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.*

at 324 n.16.  The reviewing court may "not reweigh the evidence, re-evaluate the credibility of

witnesses, or substitute [its] judgment for that of the [trier of fact]."  *Brown v. Konteh*, 567 F.3d

191, 205 (6th Cir. 2009).  And when a state court has addressed the issue of sufficiency on the

merits, the double layer of deference required by *Jackson* and AEDPA creates a "nearly

insurmountable hurdle" for the petitioner.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011)

(internal quotation marks omitted).

Under Ohio law, self-defense through the use of deadly force has three elements: (i) the defendant was not responsible for creating the situation giving rise to the affray; (ii) he had a bona fide belief that he was in imminent danger of death or great bodily and that his only means of escape was through the use of deadly force; and (iii) he did not violate any duty to retreat to avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79–80 (Ohio 1979). The burden is on the prosecution to disprove the elements of self-defense beyond a reasonable doubt. Ohio Rev. Code § 2901.05(B)(1).

The Ohio Court of Appeals implicitly rejected Tubbs's Ground Three claim when it ruled that his conviction was not against the manifest weight of the evidence. *See Nash v. Eberlin*, 258 F. App'x 761, 764–65 (6th Cir. 2007) (holding that a sufficiency of the evidence claim may be fairly presented on direct appeal as a manifest weight of the evidence claim because a decision on the issue of weight "necessarily implies a finding that there was sufficient evidence"). That determination warrants deference under AEDPA. *See* 28 U.S.C. § 2254(d).

Tubbs has not shown that the Ohio Court of Appeals' rejection of his Ground Three claim was contrary to, or an unreasonable application of, *Jackson*. 28 U.S.C. § 2254(d)(1). The court's analysis was consistent with the *Jackson* standard. *See* ECF Doc. 6-1 at 87–88; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that at state court doesn't need to cite the applicable federal decision but need only apply a rule consistent with that opinion). And the Ohio Court of Appeals' decision also did not involve an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d)(1). The evidence the court cited was evidence from which a rational trier of fact could conclude that Tubbs did not act in self-defense. Such evidence included:

(i)     Mikhail's, Shawnee's, and Sophia's testimony that Michael's health impairments made it so he was not an "able bodied" man; he was weak on his left side; and he used a cane to walk. ECF Doc. 6-3 at 118, 181, 208–09.

(ii)     Tubbs's testimony that he was aware of Michael's health issues and that he used a cane.  ECF Doc. 6-5 at 37–38.

(iii)    Mikhail's, Shawnee's, and Sophia's testimony that the physical altercation started when Tubbs shoved Michael.  ECF Doc. 6-3 at 137, 176, 195, 226.

(iv)    Mikhail's and Shawnee's testimony that they heard Tubbs say: "[G]et him out of my face before I shoot him."  ECF Doc. 6-3 at 175, 250.

(v)     Mikhail's, Shawnee's, and Sophia's testimony that Michael only struck Tubbs in the leg with his cane and that Tubbs was standing during the altercation.  ECF Doc. 6-3 at 137–39, 177–81, 227, 234–35.

(vi)    Mikhail's testimony that the shooting occurred during a "lull" in the fighting.  ECF Doc. 6-3 at 227.

(vii)   And Officer Crissman's and Detective-Sergeant Rodway's testimony that Tubbs's only visible injuries were abrasions or scrapes on his shins.  ECF Doc. 6-4 at 78–80, 191.

Therefore, the state court's conclusion that there was sufficient evidence from which a rational trier of fact could have found that Tubbs did not act in self-defense was not so lacking in justification that it was beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102–03.

Should the Court prefer to dispose of Tubbs's Ground Three claim on this basis, it should be denied as meritless.

## III.    Certificate of Appealability[5]

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that

---

[5] In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse order, a recommendation regarding the certificate of appealability is included.  Rule 11(a), 28 U.S.C. foll. § 2254.

reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Tubbs will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Tubbs's claims for relief are all procedurally defaulted and meritless.  Because jurists of reason would not find debatable that relief is not available for any of the claims raised in Tubbs's petition, I recommend that no COA issue in this case.

## IV.  Recommendations

Because Tubbs's claims are procedurally defaulted and meritless, I recommend that Tubbs's claims be DISMISSED as defaulted or DENIED on the merits and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Tubbs not be granted a COA.

Dated: December 7, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report & recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the

magistrate judge.  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).
Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the
right to raise the issue on appeal either to the district judge or in a subsequent appeal to the
United States Court of Appeals, depending on how or whether the party responds to the report
and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be
specific and not merely indicate a general objection to the entirety of the report and
recommendation; "a general objection has the same effect as would a failure to object." *Howard
v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus
on specific concerns and not merely restate the arguments in briefs submitted to the magistrate
judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge
without specific objections 'wastes judicial resources rather than saving them, and runs contrary
to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL
301875, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific
objections may in rare cases be excused in the interest of justice.  *See United States v.
Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).